IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| AMERICAN GENERAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 08-0211-WS-B |
| | ) | |
| MELANIE G. JONES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This interpleader action comes before the Court on plaintiff American General Life
Insurance Company's Motion for Discharge of Further Liability and for Leave to Seek
Attorney's Fees (doc. 29) and defendant Melanie G. Jones' Motion to Stay All Proceedings (doc.
22). All parties have been given a full and fair opportunity to be heard, and both Motions are
now ripe for disposition.

**I.      Background.**

On April 25, 2008, plaintiff American General Life Insurance Company filed a
Complaint for Interpleader (doc. 1) against defendants Melanie G. Jones and Donald E. Jones,
pursuant to 28 U.S.C. § 1332 and Rule 22 of the Federal Rules of Civil Procedure.[1] The

---

[1]      In its Motion for Discharge, American General inaccurately asserts that it
"instituted this action pursuant to 28 U.S.C. § 1335." (Doc. 29, ¶ 1.) In addition to conflicting
with the plain terms of the Complaint, American General's suggestion that this action was
brought under § 1335, if given credence, would create an insuperable jurisdictional obstacle, to-
wit: the requirement in statutory interpleader actions that there be at least minimal diversity
between the claimants, which does not exist here because both claimants are Alabama citizens.
*See* 28 U.S.C. § 1335(a)(1) (statutory interpleader action requires "[t]wo or more adverse
claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title");
*State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967)
(noting that Section 1335 "has been uniformly construed to require only 'minimal diversity,' that
is, diversity of citizenship between two or more claimants, without regard to the circumstance
that other rival claimants may be co-citizens"); *Hauger v. John Hancock Life Ins. Co. (USA)*,
2008 WL 341432, *3 n.2 (M.D. Fla. Feb. 5, 2008) (contrasting jurisdictional requirements of
rule and statutory interpleader actions). Given that the jurisdictional prerequisites of statutory

Complaint concerns the disposition of approximately $100,000 in proceeds of American
General's life insurance policy number YME0746351 issued to insure the life of Bobby J. Jones,
who died on or about October 6, 2007.  According to the Complaint, American General faces
conflicting claims from defendants Melanie G. Jones (the insured's widow and the policy's
primary beneficiary) and Donald E. Jones (the personal representative of the insured's estate) for
those insurance proceeds, such that it may be exposed to double or multiple liabilities.
Determination of the proper recipient of those proceeds has been clouded by the fact that
Melanie Jones has been charged criminally in connection with the insured's death, such that
(depending on the outcome of those criminal proceedings) she may be disqualified from
receiving policy benefits by operation of Alabama Code § 43-8-253(c), in which case the
proceeds would revert to the insured's estate, of which Donald Jones is personal representative.
The Complaint requests, *inter alia*, that the Court release and discharge American General from
any liability to defendants under or relating to the proceeds of policy number YME0746351.

On May 13, 2008, with leave of court, American General deposited interpleader funds in
the amount of $102,913.72 with the Clerk of Court, representing the proceeds of the policy plus
accrued interest.  (Doc. 12.)  Those funds are being held in the registry of this District Court
pending adjudication of the conflicting claims by Melanie G. Jones and Donald E. Jones.[2]

In the current batch of pending Motions, American General asks the Court to be
discharged and relieved of any further responsibility in this matter, and also to be awarded its
attorney's fees.  For her part, Melanie Jones requests that this action be stayed pending the
conclusion of the ongoing criminal proceedings against her.

## II.    American General's Motion for Discharge and for Attorney's Fees.

### A.    *Motion for Discharge.*

Having surrendered the disputed funds and haled the two claimants into federal court to
litigate their respective interests in said funds, American General now seeks discharge from

---

interpleader are not present, the Court will disregard plaintiff's stated reliance on § 1335 and will
construe this case as a rule interpleader action, as it was pleaded in the Complaint.

[2]    At no time has either claimant challenged the sufficiency or completeness of these
interpleaded funds to fulfill American General's obligations under the subject insurance policy.

further liability under the policy and dismissal as a party to this action.

As a general matter, a stakeholder who brings a rule interpleader action is entitled to be discharged from any and all liability to the claimants/defendants where there is no longer any material controversy concerning its obligations to those claimants. *See Standard Ins. Co. v. Nelson*, 2007 WL 1453099, *1 (W.D. Wash. May 17, 2007) ("Once it has been determined that an interpleader action is appropriate, federal courts are entitled to discharge a disinterested stakeholder in an interpleader action."); *General Elec. Capital Assur. v. Van Norman*, 209 F. Supp.2d 668, 670 (S.D. Tex. 2002) (discharging plaintiff in rule interpleader action where defendants did not oppose discharge and there was no longer any material controversy involving plaintiff); *General Acc. Group v. Gagliardi*, 593 F. Supp. 1080, 1087 (D. Conn. 1984) (in rule interpleader context, "the general equitable powers of the court permit, if not invite, the court to receive a deposit and thereafter discharge the stakeholder"). In this case, American General has deposited the full amount of the disputed proceeds (including accrued interest) with the Clerk of Court. Despite being given a full and fair opportunity to do so, neither defendant has opposed American General's request to be discharged or identified any reason why the funds proffered by American General are inadequate or incomplete to satisfy in full its obligations under the subject insurance policy. Nor is there any suggestion of bad faith or other misconduct by American General in connection with the policy or the claims handling process. Accordingly, American General's unopposed request to be discharged from this action will be **granted**.[3]

---

[3] "Subject matter jurisdiction in interpleader actions brought under Rule 22 ... must be based on the general jurisdiction statutes applicable to civil actions in federal court." *Island Title Corp. v. Bundy*, 488 F. Supp.2d 1084, 1090 (D. Haw. 2007). American General's Complaint comported with applicable jurisdictional thresholds by pleading complete diversity of citizenship and an amount in controversy in excess of $75,000, thereby giving rise to federal subject matter jurisdiction under 28 U.S.C. § 1332. (*See* doc. 1.) In rule interpleader actions that initially satisfy the diversity and amount-in-controversy requirements of § 1332, federal courts have continued to exercise jurisdiction after the dismissal of the stakeholder, even though the remaining parties (*i.e.*, the claimants) are not diverse from each other. *See Leimbach v. Allen*, 976 F.2d 912, 917 (4th Cir. 1992) (dismissal of stakeholder before final judgment does not destroy jurisdiction in rule interpleader action if jurisdiction was present when action was filed, even though claimants were non-diverse from each other); *Eikel v. States Marine Lines, Inc.*, 473 F.2d 959, 965 (5th Cir. 1973) ("It is well established that once the court properly has jurisdiction over the main claim, as it did here, it can then adjudicate other claims among the non-diverse

That said, American General's request to enjoin claimants from bringing other claims against it concerning the subject life insurance policy pursuant to 28 U.S.C. § 2361 is due to be denied. This request overlooks the distinction between statutory interpleader and rule interpleader. It is black-letter law that § 2361 is not available in the rule interpleader context, but is confined to statutory interpleader proceedings. *See Boston Old Colony Ins. Co. v. Balbin*, 591 F.2d 1040, 1042 n.5 (5th Cir. 1979) (noting that § 2361 "expressly refers to § 1335 and does not mention either the diversity statute or Rule 22"); *Nelson*, 2007 WL 1453099, at *2 ("Plaintiffs have filed this interpleader action under Rule 22, and therefore do not have § 2361 at their disposal."); *Harris Corp. v. Dunn*, 2006 WL 2691541, *3 (M.D. Fla. Aug. 25, 2006) (Section 2361 "is not available as a basis for an injunction in a Rule 22 case"); *Truck-A-Tune, Inc. v. Re*, 856 F. Supp. 77, 82 n.9 (D. Conn. 1993) ("Section 2361 is inapplicable to actions brought solely under Rule 22."); 7 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 1717 ("Section 2361 only authorizes injunctions against other judicial proceedings in statutory-interpleader actions; it does not apply to rule interpleader."). As such, plaintiff's request for a § 2361 injunction fails as a matter of law.

American General's invocation of 28 U.S.C. § 2283 as an alternative basis for injunction appears similarly flawed. *See Balbin*, 591 F.2d at 1042 n.5 ("If jurisdiction rests solely on the diversity statute, it is questionable whether the District Court could enjoin the proceedings in the state court because of the Anti-Injunction Act, 28 U.S.C. § 2283."); 7 Wright, Miller & Kane, at § 1703 (observing "uncertainty on the point" and indicating that "it may be more difficult to enjoin state-court proceedings when an interpleader action is brought under the rule than under the statute").[4]

---

parties that are closely related to the main claim and are ancillary to the main suit."); *Nelson*, 2007 WL 1453099, at *1 ("Federal courts maintain subject matter jurisdiction over rule interpleader actions even when the diverse stakeholder is dismissed, leaving co-citizen claimants to litigate the outcome of the stake in controversy."). Accordingly, notwithstanding the fact that both claimants (the sole remaining parties) are Alabama citizens, the discharge of American General at this time in no way impairs the Court's jurisdiction over the competing claims of Melanie Jones and Donald Jones to the interpleaded funds.

[4]      Even assuming that a § 2283 injunction might be appropriate in certain rule interpleader scenarios, the Court is unable to discern why that would be so here. By its terms,

Simply put, entry of an injunction in the rule interpleader context is at best problematic; therefore, American General's cursory recitation of §§ 2361, 2283 and 1651, with no elaboration or allowance for the rule interpleader nature of these proceedings, as warranting issuance of an injunction in this case fails to persuade the Court of the propriety of enjoining defendants from initiating or pursuing any action against American General in any court to recover the proceeds of the subject life insurance policy.  Therefore, the Court exercises its discretion to **deny** plaintiff's request for a permanent injunction barring defendants from instituting or pursuing any court action in any forum against American General for the recovery of proceeds of the subject insurance policy.

### B.    *Motion for Award of Fees and Costs.*

Next, American General requests an award of attorney's fees and costs in the amount of $5,930.01.  In support of this request, American General submits an affidavit by its counsel of record.  (*See* doc. 32, at Exh. A.)  This affidavit adequately documents that American General has incurred attorney's fees in the total amount of $5,567.85, plus costs of $362.16, in connection with filing and litigating this interpleader action.  (*Id.*, ¶ 3.)

"Under Federal law, the general rule is that a disinterested 'mere stakeholder' plaintiff

---

the Anti-Injunction Act allows for a federal court to enjoin state-court proceedings "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283. But there are no state court proceedings pending here, as between claimants and American General.  Nor are there any counterclaims.  To the extent that either claimant might attempt to sue American General in the future concerning these insurance proceeds, the judgment of this Court in this interpleader action would preclude them from doing so by operation of res judicata or collateral estoppel.  It is therefore unclear how an injunction in this case would be necessary either to aid this Court's jurisdiction or to protect or effectuate its judgment, which is the touchstone of the § 2283 inquiry.  *See generally State of Texas v. State of Florida*, 306 U.S. 398, 412, 59 S.Ct. 563, 83 L.Ed. 817 (1939) ("While courts of equity in [interpleader] suits may and frequently do give incidental relief by injunction ..., they are not bound to do so and their adjudication of the conflicting claims is not any the less effective as res judicata because not supplemented by injunction.").  In the absence of any showing by American General that a § 2283 injunction is necessary either to aid this Court's jurisdiction or to protect or effectuate its judgments, much less any showing that the law of this Circuit authorizes same, the Court in its discretion declines to enter such an injunction here.  The same analysis defeats American General's perfunctory citation of the All-Writs Act, 28 U.S.C. § 1651, as another alternative basis for entry of injunction.

who brings a necessary interpleader action is entitled to a reasonable award of attorneys' fees." *Unum Life Ins. Co. of America v. Kelling*, 170 F. Supp.2d 792, 793 (M.D. Tenn. 2001). Indeed, "reasonable attorney's fees and costs are routinely awarded to a disinterested stakeholder when those fees and costs are attributable to the interpleader action." *Advantage Title Agency, Inc. v. Rosen*, 297 F. Supp.2d 536, 539 (E.D.N.Y. 2003); *see also Prudential Ins. Co. of America v. Boyd*, 781 F.2d 1494, 1497 (11th Cir. 1986) ("In an interpleader action, costs and attorneys' fees are generally awarded, in the discretion of the court, to the plaintiff who initiates the interpleader as a mere disinterested stake holder."). To award fees and costs, a court must find each of the following elements: (1) a disinterested stakeholder, (2) who had conceded liability, (3) who has deposited the disputed funds into court, and (4) who has sought a discharge from liability. *See, e.g., Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989).

Notwithstanding the aforementioned criteria, an interpleader plaintiff has no absolute right to recover its fees and costs. To the contrary, courts have broad discretion in determining whether to allow recoupment of fees and costs at all and, if so, in setting the amount awarded to an interpleader plaintiff. *See, e.g., Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000); *Kelling*, 170 F. Supp.2d at 794 (whether to allow recovery of attorney's fees and costs in interpleader action is committed to judicial discretion, and fees and costs are rarely awarded as a matter of course); *Boyd*, 781 F.2d at 1497 (pointing out that award of costs and attorney's fees to interpleader plaintiff lies "in the discretion of the court").

Moreover, the Eleventh Circuit has acknowledged an important exception to the liberal allowance of interpleader fee and cost awards. In *In re Mandalay Shores Co-op. Housing Ass'n, Inc.*, 21 F.3d 380 (11th Cir. 1994), the court opined that "attorneys' fees are not warranted ... when a stakeholder's interpleader claim arises out of the normal course of business." *Id.* at 383.[5]

_____

[5]     The Eleventh Circuit explained the rationale for this exception in the following terms: "[A]n insurance company, for example, avails itself of interpleader to resolve disputed claims to insurance proceeds – disputes that arise with some modicum of regularity. In a sense, the insurance company will use interpleader as a tool to allocate proceeds and avoid further liability. As the costs of these occasional interpleader actions are foreseeable, the insurance company easily may allocate the costs of these suits to its customers." *Mandalay Shores*, 21 F.3d at 383.

The *Mandalay Shores* court pointed out that this exception "typically is applied to insurance companies" in interpleader actions. *Id.* Lower courts in this Circuit have adhered to the *Mandalay Shores* guidance and have generally been loath to award fees and costs to life insurance companies for whom interpleader actions are an entirely predictable and routine cost of doing business for which appropriate mitigating measures can be taken in advance. *See, e.g., American General Life Ins. Co. v. Soule*, 2008 WL 4790654, *3 (M.D. Fla. Oct. 27, 2008) (in interpleader action involving conflicting claims for life insurance proceeds, insurer "is not a disinterested or innocent stakeholder" and "the cost of handling the conflicting claims should be treated as a regular cost of doing business" for the insurer, such that it was not entitled to award of attorney's fees); *Hauger v. John Hancock Life Ins. Co. (USA)*, 2008 WL 341432, *4 (M.D. Fla. Feb. 5, 2008) ("where multiple claimants are disputing the ownership of insurance proceeds, the chief beneficiary of an interpleader action is the insurance company"); *Life Investors Ins. Co. of America v. Childs*, 209 F. Supp.2d 1255, 1257 (M.D. Ala. 2002) ("While there may be cases in which an interpleader plaintiff insurance company could obtain attorney's fees, there is nothing in the record here that changes the normal rule that insurance companies are not entitled to attorney's fees in interpleader case."); *Prudential Property & Cas. Co. v. Baton Rouge Bank & Trust Co.*, 537 F. Supp. 1147, 1150-51 (M.D. Ga.1982) (denying award of attorney's fees to insurance company where "claims to the fund are of the type that arise in the ordinary course of business," such that it "seems unreasonable to award an insurance company fees for bringing an action which is primarily in its own self-interest").[6]

---

[6]     This line of reasoning is by no means unique to the Eleventh Circuit. *See, e.g., Kelling*, 170 F. Supp.2d at 795 ("Competing claims arise during the normal course of [insurance] business and the cost of doing such business should not be transferred to the insured."); *Aetna U.S. Healthcare v. Higgs*, 962 F. Supp. 1412, 1414-15 (D. Kan. 1997) (where interpleader plaintiff is "in the business of distributing proceeds from insurance policies ... plaintiff should [not] be permitted to shift the cost of distributing the proceeds in this case to someone else"); *Sun Life Assur. Co. of Canada v. Thomas*, 735 F. Supp. 730, 733 (W.D. Mich. 1990) (denying insurance company's claims for fees and costs, reasoning that "courts are reluctant to award fees in cases where the claims are of the type that arise in the ordinary course of the stakeholder's business"); *Companion Life Ins. Co. v. Schaffer*, 442 F. Supp. 826, 830 (S.D.N.Y. 1977) (rejecting insurance company's attempt to shift to claimants costs arising from "inevitable and normal risks of the insurance business" based on conflicting claims to a policy); *Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965) (indicating that court was "not impressed

In this case, American General has made no showing and articulated no basis for distinguishing these circumstances from the well-settled precepts articulated in the *Mandalay Shores* line of authorities. Indeed, by all appearances, this case fits neatly within the *Mandalay Shores* paradigm. American General is a life insurance company. An ordinary, routine aspect of its business is the distribution of insurance proceeds. Inevitably, disputes can be expected to arise from time to time in the ordinary course of business among claimants vying for proceeds from American General's life insurance policies. For American General to file a lawsuit to eliminate the risk and hassle of dealing with conflicting claims by Melanie Jones and Donald Jones is an act motivated by American General's own self-interest. Furthermore, American General "can plan for interpleader as a regular cost of business and, therefore, is undeserving of a fee award." *Childs*, 209 F. Supp.2d at 1256 (quoting *Mandalay Shores*, 21 F.3d at 383). In short, American General has made no showing that it would be just or reasonable to allow it to recoup its ordinary, foreseeable costs of doing business from the insurance benefits that it was contractually obligated to pay.

Accordingly, pursuant to *Mandalay Shores* and its progeny, and in light of the specific circumstances present in this case, the Court exercises its discretion not to grant an award of attorney's fees and costs to American General.

## III.   Melanie Jones' Motion to Stay.

Finally, the Court turns to defendant Melanie Jones' Motion to Stay All Proceedings (doc. 22). As grounds for the requested stay, movant states that she has been charged with murder in the Circuit Court of Mobile County, Alabama, in connection with the death of her husband, Bobby J. Jones, who was American General's insured. As she points out, "[t]his action and the criminal prosecution are based upon the same facts." (Doc. 22, ¶ 2.) On that basis, movant expresses concern that civil discovery in this action could implicate or prejudice her in the criminal case, and that a stay of this interpleader action pending the outcome of the criminal prosecution is the only reasonable, effective means of safeguarding her Fifth Amendment

---

with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business of their insureds").

privilege against self-incrimination.

The Eleventh Circuit has explained that "a court must stay a civil proceeding pending resolution of a related criminal prosecution only when special circumstances so require in the interests of justice." *United States v. Lot 5, Fox Grove, Alachua County, Fla.*, 23 F.3d 359, 364 (11th Cir. 1994) (citations omitted); *see also U.S. ex rel. Gonzalez v. Fresenius Medical Care North America*, 571 F. Supp.2d 758, 761 (W.D. Tex. 2008) ("It is the rule, rather than the exception that civil and criminal cases proceed together.") (citation omitted). The appeals court has emphasized that "a blanket assertion of the privilege against self-incrimination is an inadequate basis for the issuance of a stay." *S.E.C. v. Wright*, 2008 WL 73676, *3 (11th Cir. Jan. 8, 2008); *see also Lot 5*, 23 F.3d at 364 (similar); *Gonzalez*, 571 F. Supp.2d at 762 ("a mere relationship between civil and criminal proceedings and the prospect that discovery in the civil case could prejudice the criminal proceeding does not necessarily warrant a stay"). Here, Melanie Jones has submitted no evidence or argument of any "special circumstances" that might warrant a stay. She does not suggest that American General initiated this civil action for the purpose of funneling incriminating evidence to the State of Alabama for its criminal prosecution against her. Nor does she make any showing that the criminal case against her was unconstitutional or inappropriately instituted. As such, Melanie Jones' mere blanket invocation of the Fifth Amendment is legally inadequate to justify the stay of these civil proceedings pending the conclusion of the criminal proceedings against her.

That said, "[t]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997); *see also Dominguez v. Hartford Financial Services Group, Inc.*, 530 F. Supp.2d 902, 905 (S.D. Tex. 2008) ("The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation ...."); *Utah v. Eli Lilly and Co.*, 509 F. Supp.2d 1016, 1019 (D. Utah 2007) (recognizing discretion to stay pending proceedings to save time and effort for parties and the court). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Thus,

in determining whether a stay is appropriate in a particular case, "the court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side." *Feld Entertainment, Inc. v. A.S.P.C.A.*, 523 F. Supp.2d 1, 3 (D.D.C. 2007) (citations omitted).

While Melanie Jones' Fifth Amendment concerns, taken in isolation, do not compel a stay, the Court nonetheless finds that a stay is appropriate for three reasons. First, the interests of efficiency and judicial economy strongly favor a stay. As a matter of Alabama statute, "[a] named beneficiary of a ... life insurance policy ... who feloniously and intentionally kills ... the person upon whose life the policy is issued is not entitled to any benefit under the ... policy ..., and it becomes payable as though the killer had predeceased the decedent." Ala. Code § 43-8-253(c). Furthermore, "[a] final judgment of conviction of felonious and intentional killing is conclusive for purposes of this section." § 43-8-253(e). Donald Jones has indicated that § 43-8-253 is the basis for his contention that the Estate of Bobby Joe Jones is entitled to the life insurance proceeds at issue herein. (Doc. 24, at 2-3.) That theory may (or may not) be conclusively resolved by the pending criminal proceedings. Therefore, the interests of efficiency and conservation of scarce judicial resources weigh in favor of allowing the state criminal proceedings against Melanie Jones to run their course before embarking on the time-consuming and expensive process of litigating these civil proceedings. Depending on the outcome of the criminal case, it may or may not be necessary to adjudicate the claimants' competing claims or the application of § 43-8-253 to these circumstances.[7] Second, the Fifth Amendment concerns identified by Melanie Jones, while not dispositive, are unquestionably a factor that militates in favor of a stay. Until the criminal proceedings have been resolved, it is difficult to conceive of how discovery may constructively be carried out in this action. Given the certainty that Melanie Jones will invoke her Fifth Amendment privilege at every turn to avoid prejudicing herself in the

---

[7]     To be clear, if Melanie Jones is convicted of the felonious and intentional killing of Bobby Joe Jones in the criminal case, then her interest in the interpleaded funds would appear to be conclusively terminated by operation of § 43-8-253, such that this action could be summarily concluded. If, however, she is not convicted of that offense, then this action will move forward for the finder of fact to "determine by a preponderance of evidence whether the killing was felonious and intentional." § 43-8-253(e).

criminal case, as a practical matter discovery would be stymied herein if this action were to move forward now.  Third, neither Melanie Jones nor Donald Jones would be prejudiced by entry of a stay of these proceedings.  In that regard, it bears noting that Donald Jones has expressly stated that he does not object to the entry of a stay pending resolution of the criminal charges against Melanie Jones.[8]

      For the reasons stated, the Court in the exercise of its discretion **grants** Melanie Jones' Motion to Stay.

**IV.   Conclusion.**

      For all of the foregoing reasons, it is hereby **ordered** as follows:

1.    American General's Motion for Discharge of Further Liability and for Leave to Seek Attorney's Fees (doc. 29) is **granted in part** and **denied** in part, as set forth below.

2.    Plaintiff's request to be discharged from this action is **granted**.  On that basis, American General Life Insurance Company is hereby **dismissed** and **discharged with prejudice** from this action and from any and all further liability or obligations to defendants Melanie G. Jones and Donald E. Jones arising from that certain life insurance policy, bearing number YME0746351 and insuring the life of Bobby Joe Jones.  In light of that determination, the Clerk of Court is directed to **terminate** American General as a party to these proceedings.

3.    American General's request in its Motion to Discharge (doc. 29) for a permanent injunction barring defendants from instituting or pursuing any court action in any forum for the recovery of proceeds of the subject insurance policy is **denied**.

4.    American General's request in its Motion to Discharge for an award of attorney's fees and costs is **denied**.

5.    Defendant Melanie G. Jones' Motion to Stay All Proceedings in this Civil Action

---

[8]     To be sure, American General filed a Limited Opposition to Motion for a Stay of All Proceedings (doc. 28), requesting that no stay be entered until American General had been dismissed and discharged from this action.  Those events having now occurred, and American General having been terminated as a party to these proceedings, no conceivable prejudice would accrue to it if the Motion to Stay were granted.

Pending Disposition of Related Criminal Prosecution (doc. 22) is **granted**. This action is **stayed** pending the resolution of the Mobile County Circuit Court criminal proceedings against Melanie G. Jones bearing criminal case number CC-08-2390. That said, the Court will not authorize an indefinite stay, but will instead monitor the criminal proceedings closely to ensure that this stay remains in place no longer than necessary. In that regard, Melanie G. Jones is **ordered** to file status reports every **60 days**, with the first such report to be due on or before **December 1, 2008**. Those reports must, at a minimum, state the current posture of the state court proceedings, including any trial setting and other deadlines that might reasonably bear on the propriety of a continuing stay in this case. Melanie Jones is further **ordered** to notify the Court promptly in writing upon the conclusion of the Mobile County Circuit Court proceedings, and to delineate the nature of that resolution and her position as to its impact on these proceedings.

DONE and ORDERED this 13th day of November, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE