IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION 08-0211-WS-B ) |
| MELANIE G. JONES, *et al.*, | ) ) |
| Defendants. | ) |

# ORDER

This interpleader action comes before the Court on cross-plaintiff / cross-defendant Donald E. Jones' Motion for Summary Judgment (doc. 64). The Motion, which rests primarily on a singular narrow legal issue, has been briefed and is ripe for disposition.

## I.  Relevant Background.

On September 10, 2007, American General Life Insurance Company ("American General") issued life insurance policy number YME0746351 (the "Policy") to decedent Bobby Joe Jones in the face amount of $100,000. (Doc. 64, Exh. B, at 3.) The insured's wife, Melanie J. Jones, was named the primary beneficiary under the Policy. (*Id.* at 14.) No contingent beneficiary was designated. (*Id.*) By the terms of the Policy, "If no beneficiary survives the Insured, the Owner or the estate of the Owner will be the beneficiary." (*Id.* at 10.) Bobby Joe Jones was the Policy owner.

On or about October 6, 2007, less than a month after the Policy was issued, Bobby Joe Jones died of a gunshot wound. (Doc. 1, ¶ 9.) Donald E. Jones was issued Letters of Administration on the Estate of Bobby Joe Jones (the "Estate") on November 7, 2007, and was duly authorized to administer the Estate. (Doc. 64, Exh. A.) Both Melanie J. Jones (decedent's wife and Policy beneficiary) and Donald E. Jones (personal representative of the Estate) made conflicting claims to American General for the subject life insurance proceeds. (Doc. 1, ¶ 11.) On April 25, 2008, American General commenced this interpleader action in this District Court

pursuant to Rule 22, Fed.R.Civ.P., naming both competing claimants as defendants. After filing this action, American General deposited interpleader funds in the amount of $102,913.72 with the Clerk of Court, with that sum representing both the face amount of the Policy and applicable interest. (Docs. 7, 12.) Such funds are presently being held in the court registry, pending resolution of the dispute between Melanie Jones and the Estate concerning who is rightfully entitled to those insurance proceeds.

On or about June 27, 2008, Melanie Jones was indicted in the Circuit Court of Mobile County, Alabama on a single count of murder. The indictment charged that she "did, with the intent to cause the death of Bobby Jones, cause the death of Bobby Jones, to-wit: by shooting him with a gun, in violation of § 13A-6-2(a)(1) of the Code of Alabama." (Doc. 64, Exh. C, at 4.) On February 25, 2010, a jury found Melanie Jones guilty as charged. (*Id.* at 9.) On April 8, 2010, Mobile Circuit Judge John R. Lockett adjudged Melanie Jones guilty of murder on the jury's verdict and sentenced her to a term of life imprisonment. (*Id.* at 10-11.) Melanie Jones promptly gave oral notice of appeal, and filed a written notice of appeal on April 15, 2010. (*Id.* at 11; doc. 70, at Exh. A.) Her direct appeal of the conviction remains pending in the Alabama appellate courts at this time.

## II.     Analysis.

The narrow legal question presented on summary judgment is whether Melanie Jones' murder conviction, in and of itself, disqualifies her from receiving the life insurance proceeds under the Policy, notwithstanding her unresolved appeal of that conviction. The Estate urges this Court to answer the question affirmatively, while Melanie Jones advocates for the opposite conclusion. There are no material disputed facts; rather, this is a purely legal (and potentially dispositive) question that has been squarely presented for adjudication at this time.

### A.     *Alabama's Slayer Statute and the Instant Dispute.*

Two Alabama provisions are germane to this inquiry. First, pursuant to Alabama's so-called "slayer statute," "[a] named beneficiary of a … life insurance policy … who feloniously and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the … policy …, and it becomes payable as though the killer

had predeceased the decedent." Ala. Code § 43-8-253(c).[1]  Second, Alabama law prescribes that "[a] final judgment of conviction of felonious and intentional killing is conclusive for purposes of this section." Ala. Code § 43-8-253(e). Thus, as a matter of Alabama statute, a life insurance beneficiary who murders the insured is foreclosed from receiving insurance benefits. If a final judgment of conviction of murder has been entered against the beneficiary for that killing, then the disqualification is automatic. Otherwise, an assessment must be made in the civil case by a preponderance of the evidence as to whether the beneficiary did or did not commit a felonious and intentional killing.[2]

It is undisputed that Melanie Jones has been convicted of a felonious and intentional killing of Bobby Joe Jones. The question presented here is whether the Mobile County Circuit Court judgment and sentence constitute a "final judgment of conviction" for purposes of subsection (e). If so, then Melanie Jones cannot receive the Policy proceeds as a matter of law, and those funds would instead be payable to the Estate, notwithstanding her pending appeals of that criminal conviction. If, however, her ongoing appeal renders that judgment of conviction non-final, then disbursement of the Policy proceeds would be inappropriate at this time, pending either final resolution of the appeal in the criminal proceedings or a trial on the merits in this civil case to ascertain by a preponderance of the evidence whether Melanie Jones feloniously and intentionally killed the insured.

---

[1] The public policy justification for this rule is that "a wrongdoer may not profit by his own wrong." Commentary to Ala. Code § 43-8-253; *see also Weaver v. Hollis*, 22 So.2d 525, 527 (Ala. 1945) ("that the law permits no one to profit by his own crime, precludes a felonious killer from taking from his murdered spouse"); *Caterpillar Inc. v. Estate of Lacefield-Cole*, 520 F. Supp.2d 989, 996 (N.D. Ill. 2007) (purpose of slayer statutes "is to prevent slayers from profiting or obtaining a benefit from their wrongdoing … by creating the legal fiction that the slayer predeceased his or her victim").

[2] In that regard, the statute allows for the possibility of disqualification of a beneficiary of a life insurance policy without a final judgment of conviction, upon proper findings by a preponderance of the evidence. In particular, the statute reflects that "[i]n the absence of a conviction of felonious and intentional killing the court may determine by a preponderance of evidence whether the killing was felonious and intentional for purposes of this section." Ala. Code § 43-8-253(e). Accordingly, even if a beneficiary is acquitted on a murder charge in criminal proceedings, this statutory scheme nonetheless provides for disqualification from receiving benefits if a preponderance of the evidence establishes that he or she feloniously and intentionally killed the decedent. *See generally* Commentary to Ala. Code § 43-8-253.

The problem is that neither § 43-8-253 nor the surrounding sections of the Alabama Probate Code define the term "final judgment of conviction" for purposes of subsection (e). Alabama courts have likewise never weighed in on this question in a published opinion. Accordingly, the Court will look to decisions from other jurisdictions for guidance as to whether Melanie Jones' murder conviction is "final" for purposes of the slayer statute, or whether her pending appeal renders it non-final.[3]

**B.     *The Uniform Probate Code and Authorities from Other Jurisdictions.***

In considering other jurisdictions' assessments of whether a pending appeal renders a criminal conviction non-final for purposes of a slayer statute, it is critical to compare apples to apples. There are at least two substantially different types of provisions that states have adopted to address this issue, including the version promulgated in the pre-1990 Uniform Probate Code and that set forth in the current Uniform Probate Code. The pre-1990 version, as implemented by the Alabama legislature, features language that "[a] final judgment of conviction of felonious and intentional killing is conclusive for purposes of this section." Unif. Probate Code § 2-803(e) (pre-1990 version). Meanwhile, the current formulation of the Uniform Probate Code – which many states (not including Alabama) have adopted -- reads as follows: "***After all right to appeal***

---

[3] In doing so, the Court rejects Melanie Jones' position that "[t]he Court cannot look to foreign statutes to interpret the meaning of Alabama's slayer statute and must look to the law and citations existing in Alabama defining ALA. Code § 43-8-253(e)." (Doc. 70, at 2.) As an initial matter, there are no "law and citations existing in Alabama" defining subsection (e). Melanie Jones is urging this Court to consult a source that she has not cited and that does not exist. Besides, this argument disregards two significant facts militating in favor of considering other jurisdictions' construction of "final judgment of conviction" language in the slayer statute context. First, the Alabama legislature patterned this statute on § 2-803 of the pre-1990 version of the Uniform Probate Code. *See Alfa Life Ins. Corp. v. Bonner*, 933 So.2d 362, 365 (Ala.Civ.App. 2005) (observing that § 43-8-253 "essentially adopted § 2-803 of the Uniform Probate Code"). Certain other states use the very same statutory language because they adopted the same uniform code; therefore, those states' construction of the same statutory language is probative to interpreting Alabama's statute. Second, the official comment to § 43-8-253 explains that "[a] growing group of states have enacted statutes dealing with the problems covered by this section, and ***uniformity appears desirable***." Commentary to Ala. Code § 43-8-253 (emphasis added). Thus, not only does Alabama utilize the same Uniform Probate Code language that various other states do, but the Alabama legislature has expressly recognized the desirability of uniform treatment of these issues. Under the circumstances, it would be improper and imprudent to adopt Melanie Jones' proposed path of averting the Court's gaze from other jurisdictions' interpretation of this aspect of identical or analogous slayer statutes.

***has been exhausted***, a judgment of conviction establishing criminal accountability for the felonious and intentional killing of the decedent conclusively establishes the convicted individual as the decedent's killer for purposes of this section." Unif. Probate Code § 2-803(g) (as amended in 1993 and 1997) (emphasis added). To interpret the Alabama statute, the Court looks to jurisdictions that, like Alabama, have continued to use the pre-1990 version (which is silent as to the meaning of "final judgment of conviction"), rather than those that use the current version (which expressly states that a criminal conviction becomes conclusive when "all right to appeal has been exhausted").

Although the Estate's brief mentions only cases that favor its desired outcome, and Melanie Jones' brief cites no cases at all, the Court's research establishes that authorities from other jurisdictions are decidedly mixed. On the one hand, courts in California and Minnesota have construed the term "final judgment of conviction" in their slayer statutes as encompassing only judgments as to which appeals have concluded. *See In re Peterson*, 67 Cal.Rptr.3d 584, 590-92 (Cal.App. 5 Dist. 2007) (applying rules of statutory construction to conclude that phrase "final judgment of conviction" in slayer statute worded like Alabama version "does not include a judgment that is on appeal" and indicating that "[w]e are aware of no contrary construction of this Uniform Probate Code language"); *Johnson v. Gray*, 533 N.W.2d 57, 60 (Minn.App. 1995) (interpreting identical "final judgment of conviction" language in slayer statute as applying "only when the direct appeal from his conviction has been terminated or the time for appeal has expired," such that "district court erred in granting summary judgment on the issue of whether Gray feloniously and intentionally killed his wife" where his criminal appeal was pending when summary judgment motion was heard).[4]

On the other hand, Florida courts have consistently interpreted the same "final judgment of conviction" language in that state's slayer statute as referring to a trial court's adjudication of guilt, without regard to pending appeals. *See, e.g., Barber v. Parrish*, 963 So.2d 892, 893

---

[4] A federal court applying Virginia law reached a similar result to those in *Peterson* and *Johnson* in interpreting a similar, albeit apparently not identical, slayer statute. *See Prudential Ins. Co. of America v. Tull*, 524 F. Supp. 166, 171 (E.D. Va. 1981) (where state statute disqualified any person "convicted of murder" from recovering insurance proceeds upon life of victim, finding that "a person does not stand finally 'convicted' until the Virginia Supreme Court has reviewed the trial court's finding of guilt and has affirmed the conviction," such that motion for immediate distribution of insurance proceeds was properly denied).

(Fla.App. 1 Dist. 2007) (under Florida slayer statute, term "final judgment of conviction" means "an adjudication of guilt by the trial court," such that insurance funds can properly be distributed to other claimants "even if appellate remedies have not been exhausted" in criminal proceedings); *Prudential Ins. Co. of America, Inc. v. Baitinger*, 452 So.2d 140, 143 (Fla.App. 3 Dist. 1984) (as to Florida slayer statute identical to Alabama provision in pertinent respects, finding that phrase "final judgment" was "merely stylistic" and holding that "the legislature intended that 'final judgment of conviction' mean an adjudication of guilt by the trial court," notwithstanding any pending appeals).[5] Given the divergence in interpretations by courts in other jurisdictions of the same or similar statutory language, there appears to be no uniformity in application and construction of the Uniform Probate Code (pre-1990 version) on this point.

### C. *Legislative Intent.*

The salient points in the analysis are these: The statutory phrase "final judgment of conviction" in Alabama Code § 43-8-253(e) is ambiguous. It is not a defined term in the statute and could be reasonably interpreted as meaning either finality at the trial court level or finality in the sense that all appeals have been exhausted. Moreover, this term has not been construed by Alabama courts in the context of a slayer statute case where there is a pending appeal of the murder conviction. And it has been ascribed varying meanings by courts in other jurisdictions

---

[5] Likewise, courts in multiple other states have construed similar (but not identical) slayer statute language as applying to a claimant convicted of murder, even where an appeal of that conviction is ongoing. *See United Investors Life Ins. Co. v. Severson*, 151 P.3d 824, 829 (Idaho 2007) (where slayer statute provides that record of conviction "shall be admissible in evidence against a claimant of property," mere fact that claimant has a "pending appeal of his criminal conviction does not prevent a decision" on interpleader action brought by insurer); *In re Estate of Ahmed*, 2002 WL 1396794, *1 (Ohio App. 7 Dist. June 20, 2002) (finding no error where probate court entered order of disinheritance against claimant convicted of murder, even though claimant had filed appeal in criminal case, inasmuch as the underlying conviction still stood and given duration of most appeals, slayer statute "cannot be reasonably construed to require an exhaustion of a murderer's appeals"); *Angleton v. Estate of Angleton*, 671 N.E.2d 921, 928 n.8 (Ind.App. 1996) ("We are unpersuaded by Brad's argument that the probate court erred in refusing to permit him to present evidence regarding his culpability because his appeal of his criminal conviction is pending …. Notwithstanding Brad's pending appeal, his conviction in the trial court stands."); *State Farm Life Ins. Co. v. Davidson*, 495 N.E.2d 520, 521-22 (Ill.App. 5 Dist. 1986) (where slayer statute provided that "person convicted of murder" is precluded from receiving life insurance proceeds, claimant's argument that no distribution should occur while her criminal appeals were pending was rejected, per reasoning that "[t]he pendency of an appeal does not stay the finality of the conviction").

examining identical or analogous slayer statute provisions. In light of these circumstances, the Court turns to statutory canons of construction to shed light on the matter. "In Alabama, the fundamental rule of construction is to ascertain and effectuate the intent of the Legislature as expressed in the statute … which may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained." *Clark v. Riley*, 595 F.3d 1258, 1266 (11th Cir. 2010) (citations omitted).

After careful consideration, the undersigned is of the opinion that the Alabama legislature intended the phrase "final judgment of conviction" in § 43-8-253(e) to refer to an adjudication of guilt by the trial court, without regard to pending appeals. Four considerations inform this conclusion. First, the Alabama legislature has used the phrase "final judgment" in a wide variety of other contexts (civil and criminal) to refer specifically to a trial court adjudication, independent of any appeal. *See, e.g.,* Ala. Code § 12-22-2 ("From any final judgment of the circuit court or probate court, an appeal lies to the appropriate appellate court ….").[6] Such widespread usage of the term "final judgment" in Alabama statutes to refer to judgments at the

---

[6] *See also* Ala. Code § 6-6-641 ("From the final judgment of any circuit court in any such proceeding, an appeal shall lie to the appropriate appellate court …."); Ala. Code § 6-5-642 (appeal of class certification ruling "shall in no way affect the right of any party, after the entry of final judgment, to appeal the earlier certification of, or refusal to certify, the class"); Ala. Code § 6-6-15 (if the trial court sets aside an arbitration award, "such action shall be a final judgement [*sic*] from which an appeal shall lie"); Ala. Code § 6-6-222 (declarations by Alabama courts of record "shall have the force and effect of a final judgment"); Ala. Code § 11-44B-48(g) ("An appeal may be taken from any final judgment of the circuit court to the Alabama Court of Civil Appeals or the Alabama Supreme Court …."); Ala. Code § 11-51-14 ("without further proof a final judgment shall be entered by the circuit judge adjudging such property liable for such taxes"); Ala. Code § 11-51-157 ("the appeal shall be perfected within 42 days from the entry of a final judgment" entered by the circuit court); Ala. Code § 12-12-70(b) ("[a] defendant may appeal from a final judgment of the district court in a criminal or quasi-criminal case by filing notice of appeal"); Ala. Code § 15-18-78 ("[a] restitution order in a criminal case shall be a final judgment"); Ala. Code § 35-4-322 (recognizing parties' right to appeal ruling on application to compel conveyance, "as on other final judgments and decrees of the probate court"); Ala. Code § 36-11-15 (in impeachment proceedings, unsuccessful party has right to appeal "[f]rom any final judgment or decision entered by any circuit court"); Ala. Code § 41-22-21 ("An aggrieved party may obtain a review of any final judgment of the circuit court … by appeal to the appropriate court to which the appeal or review lies."); Rule 803(22), Ala.R.Evid. (Alabama hearsay rule does not exclude "[e]vidence of a final judgment … adjudging a person guilty …. The pendency of an appeal may be shown but does not affect admissibility.").

trial court level, irrespective of the status of any appeal, suggests that the Alabama legislature meant the same thing when it used that term in the context of the slayer statute.

Second, Alabama courts have, in various settings, recognized the finality of criminal judgments of conviction even where appeals are pending. *See generally Carroll v. State*, 599 So.2d 1253, 1263 (Ala.Crim.App. 1992) (citing with approval authority defining "conviction" as necessitating "pronouncement of sentence upon the verdict or plea of guilty in order to obtain a judgment that is final, so far as the trial court is concerned") (citation omitted); *Prock v. State*, 471 So.2d 519, 521 (Ala.Crim.App. 1985) ("Convictions are a verity until set aside ….") (citation omitted); *Miliner v. State*, 431 So.2d 581, 582 (Ala.Crim.App. 1983) (witness can be impeached using conviction for crime of moral turpitude, even if that conviction is presently being appealed); *Rocker v. State*, 443 So.2d 1316, 1318 (Ala.Crim.App. 1983) ("The trial judge imposed sentence of imprisonment of ten years, and the present appeal is from the final judgment of conviction and sentence."). The legislature can be presumed to have been aware that state courts view criminal judgments as final once entered.

Third, there is no doubt that the legislature enacted the slayer statute to promote the principle that the law permits no one to profit from his or her own crime. *See* Commentary to § 43-8-253 (discussing section as a codification of Alabama public policy "that a wrongdoer may not profit by his own wrong" and that "a person cannot benefit from his own wrongdoing"); *see generally Protective Life Ins. Co. v. Linson*, 17 So.2d 761 (Ala. 1944) (to permit beneficiary who feloniously killed insured to recover policy benefits "is to reward him for his evil deed" and "would be a reproach to the jurisprudence of the country") (citation omitted). As such, it would advance the legislative intent to construe § 43-8-253(e) strictly against one who has been convicted of the felonious and intentional killing of the insured. The statute is designed to prevent convicted killers from profiting from their misdeeds. This aim would be furthered by construing "final judgment of conviction" as meaning that a trial court adjudication of guilt cuts off the convicted killer's right to receive insurance proceeds on the life of his or her victim, thereby allowing the proceeds to be distributed to non-culpable beneficiaries or the victim's estate. To hold otherwise would be to extend a benefit to a convicted murderer by enabling him or her to stymie distribution of insurance proceeds for the entire duration of the often-protracted and labyrinthine criminal appeals process. Simply put, it would promote the underlying purpose of the statute to construe it as meaning that, once the jury has spoken and the beneficiary has

been duly adjudicated guilty at the trial court level of feloniously and intentionally killing the insured, his or her right to life insurance proceeds for that crime is forfeited.

Fourth, as mentioned *supra*, when the Uniform Probate Code was amended after 1990, those modifications replaced the "final judgment of conviction" language with a statement that a judgment becomes conclusive only "after all right to appeal has been exhausted." Unif. Probate Code § 2-803(g) (as amended in 1993 and 1997). Had the Alabama legislature wished to provide that murder convictions are not conclusive for slayer statute purposes until all appeals have been exhausted, it could have adopted that amendment. Its silence in the face of this change to the Uniform Probate Code suggests that the Alabama legislature did not intend to circumscribe the class of conclusive criminal convictions to those for which appeals have concluded. In short, the Alabama legislature's failure to amend the slayer statute when it could have done so is probative of its intent that the existing provision applies to judgments of conviction that are final at the trial court level.

Based on these considerations, coupled with Melanie Jones' failure to articulate any colorable legal justification for construing § 43-8-253(e) as applying only to murder convictions as to which appeals have been exhausted, the Court finds as a matter of law for the Estate on its Motion for Summary Judgment. Melanie Jones' conviction of murder in Mobile County Circuit Court is indeed a "final judgment of conviction of felonious and intentional killing" for purposes of that section, notwithstanding her pending appeal. As such, that conviction is "conclusive" evidence that Melanie Jones feloniously and intentionally killed Bobby Joe Jones, pursuant to § 43-8-253(e). Because Melanie Jones is conclusively deemed to have feloniously and intentionally killed Bobby Joe Jones, she is barred from receiving any benefit under the Policy, and that Policy is payable as though she predeceased Bobby Joe Jones, by operation of § 43-8-253(c). In that event, and there being no other named beneficiaries, the Policy language unambiguously provides that the insurance benefits revert to the owner's estate. Accordingly, the Estate is entitled to entry of judgment as a matter of law in its favor on the Estate's cross-claims against Melanie Jones, and on Melanie Jones' corresponding cross-claims against the Estate.[7]

---

[7] In so concluding, the Court does not credit the Estate's alternative ground for summary judgment that, even if Melanie Jones' pending appeal of her conviction renders it not a
(Continued)

## III. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. The Motion for Summary Judgment by Donald E. Jones, as Personal Representative of the Estate of Bobby Joe Jones, is **granted**. Judgment will be entered in favor of cross-plaintiff / cross-defendant Donald E. Jones, as personal representative of the Estate of Bobby Joe Jones, and against cross-defendant / cross-plaintiff Melanie G. Jones on each and every claim between them.

---

"final judgment of conviction" and therefore not "conclusive" under § 43-8-253(e), the fact of that conviction still establishes by a preponderance of the evidence that she feloniously and intentionally killed Bobby Joe Jones and that she is therefore disentitled from receiving life insurance benefits. It is true, of course, that Melanie Jones' conviction is admissible in this case under Alabama and federal law and may be considered in § 43-8-253(e)'s preponderance test, regardless of her pending appeal. *See* Rule 803(22), Fed.R.Evid. (evidence of a felony conviction is admissible "to prove any fact essential to sustain the judgment," and "[t]he pendency of an appeal may be shown but does not affect admissibility"); *M.L.E. v. K.B. ex rel. A.B.*, 794 So.2d 1143, 1146 n.2 (Ala.Civ.App. 2000) ("The fact that the stepfather's conviction for sexual abuse in the first degree was still on appeal went to the weight of the evidence and not to its admissibility."). But Melanie Jones has expressly denied having feloniously and intentionally killed Bobby Joe Jones. This denial could obviously be reduced to admissible form at trial via Melanie Jones' own testimony, and is therefore properly considered on summary judgment. *See, e.g., Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) (on summary judgment, courts consider "evidence which can be reduced to an admissible form"). If her conviction is not conclusive under § 43-8-253(e), this Court could not find by a preponderance of the evidence that she feloniously and intentionally killed the insured, so as to trigger disqualification under the slayer statute, without making credibility findings adverse to Melanie Jones, the nonmovant on summary judgment. Doing so would be contrary to well-settled law. *See, e.g., Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007) (on summary judgment, courts "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant") (citation omitted). The Estate says Melanie Jones murdered the decedent. She says she did not. That factual conflict precludes entry of summary judgment on the Estate's preponderance theory. Accordingly, the Court declines the Estate's invitation on summary judgment to make an alternative determination that, even if Melanie Jones' conviction is not final, the preponderance of the evidence shows that she feloniously and intentionally killed her husband, such that she is disqualified from receiving benefits. If her conviction is not final, then there is a triable, disputed issue of fact as to whether she did or did not murder the insured, which issue is not amenable to resolution on summary judgment. Thus, the Court's ruling rests solely on its determination that Melanie Jones does have a "final judgment of conviction" that is conclusive for slayer statute purposes.

2. The Court expressly finds and declares that the Estate has the sole right to the proceeds of the subject life insurance policy issued by American General Life Insurance Company, which proceeds totaling $102,913.72 have been interpleaded and are presently on deposit with the Clerk of Court. The Court further finds and declares that Melanie G. Jones is disqualified from any right to such insurance funds and interest by operation of Alabama Code § 43-8-253(c) and (e).

3. Bearing in mind the 14-day automatic stay for execution on a judgment, pursuant to Rule 62(a), Fed.R.Civ.P., Melanie G. Jones is **ordered** on or before **August 3, 2010**, to **show cause**, if any exists, why the interpleaded funds should not be distributed to the Estate at this time. Any motion or other response to this Order by Melanie G. Jones must be supported by authorities, as appropriate, and must state specifically what action she wants the Court to take with respect to the interpleaded funds, and why. The Estate will be afforded an opportunity to be heard on any such motion or response.

4. A separate judgment will enter.

DONE and ORDERED this 20th day of July, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE